We'll hear from the defendant's lawyer. Good morning, your honors. My name is, may it please the court, my name is Rhett Johnson. I'm here on behalf of my client, Mr. Kenneth Rush. He was present in person, seated behind counsel table in the first row. In this case, the district court correctly found that the police violated Mr. Rush's Fourth Amendment rights by lying to him when they falsely asserted they had a search warrant. The proper remedy for such intentional and deliberate violation of Mr. Rush's Fourth Amendment rights is suppression of the evidence. Briefly on the facts, your honors, Mr. Rush... The only question we have is whether he correctly applied a good faith exception. That is correct, and whether exclusion should have been, the exclusionary rule should have been applied, your honor. Talk to us about it. To all evidence or just the drugs. It would, at a minimum, apply to the drugs found in the kitchen and to Mr. Rush's statements on scene at the apartment. I believe it's a separate question. Mr. Rush came back later to the in-bed headquarters and gave a separate statement. That would be a separate question, not squarely in front of the court, I believe, but at a minimum, his on-scene statements in the drugs, because I believe he pointed the officers in the direction of where the drugs were. Would his girlfriend's statements be affected by this decision today? I'm sorry, your honor, I didn't follow that. Or would the girlfriend's statements to the police be affected by our decision in this case today? That's correct. The girlfriend's statements would still be admissible at trial. And briefly on the facts, Mr. Rush, he was alone in the privacy of a bedroom of, I guess you would call it a romantic partner's apartment. He was an invited overnight guest, stayed there for three nights. He maintained an expectation of privacy. You mean where they had a little liaison? It was her house, her place, right? I believe their relationship was undefined, but romantic in nature at the time. But she had just invited him to come for a night or two. Yes, and they've been out to eat and shared the same bedroom and all of that, your honor. So it seemed like to me the issue of whether that he had an expectation of privacy, all that, is really not before us, but I don't, it doesn't look like it was arguably low at all. So the only question is, the police come there, they then lie about a warrant, and they give an explanation for it, and the judge accepts it and says it's good faith. Yes, that is correct, your honor. We are solely here on whether the application of the exclusionary rule. Why is it not a matter of good faith exception, the fact that the police said he undertook to do it because he wanted to protect the girlfriend? It is a hallmark of Fourth Amendment jurisprudence that we don't look at the subjective intentions of the officers. We don't look at the noble purposes they ascribe to their actions. We look objectively at their actions, and for the past 40 some odd years since Bumper v. North Carolina, it has been clear, crystal clear to law enforcement, that you cannot falsely announce that you have a search warrant. And the price you pay if you do is you don't get the benefit of using that evidence obtained by false and claiming you have a search warrant. This is essentially law enforcement usurping the by announcing that, in fact, they have the authority to search a private citizen's belongings that is backed by judicial authority. In a case out there that says that good faith exception has been applied in the context where the officers deliberately lie. I don't believe there's a case directly on point, your honor. There's certainly no case that has upheld an officer's lie and said the exclusionary rule shouldn't apply when they falsely announced they have a search warrant. And this sort of goes to the, you know, for the exclusionary rule to apply, it needs to apply to intentional, deliberate, culpable conduct or grossly negligent or recklessness. The district court nor the government really assign a level of cultability to the officer's conduct. They never quite say it's negligent, never quite say it's deliberate, never quite say it's intentional. But I submit to the court... The officers themselves said it was intentional, right? I mean, it was intentional. That's what they meant to do because they wanted to protect allegedly the woman. Absolutely. It was intentional. And the case law, the Haring line of cases, the USP Davis cases all stand for the proposition that when you have intentional misconduct, intentional Fourth Amendment violation, exclusion is the usual remedy that is applied. The district court and the government also sort of have misplaced reliance on a couple of other factors. They cite Mr. Rush's cooperation as sort of this undertone to suggest that, well, he probably would have cooperated anyway. He was so cooperative throughout the whole encounter. But that's precisely what we expect citizens to do when they are confronted with a search warrant that is purportedly backed by judicial authority. We expect them to comply and then complain later. And that sort of undercuts their dangerousness argument because if he's so cooperative, then what was there to be afraid of? Why do you need to lie to him? There's a lot in this case that undercuts their dangerousness argument. This was a claim that was largely undeveloped. Mrs. Willis's sole request is that they remove Mr. Rush from the apartment. Officers failed to do that. They could have arrested him. I mean, they had a substantial amount of crack cocaine they found. They could have arrested him, had a detention hearing. Maybe, maybe not. He would have bonded out. But they did none of those things. And this was sort of a claim that was largely undeveloped and not really taken seriously by law enforcement. Does the fact that he said very little, I mean, I understand your preceding argument about respecting the law. Does the fact that he didn't say anything other than, you know, something to the effect, why are you here? He didn't protest. He didn't say, no, I don't consent. Does that play into it? That should play little role in the court's analysis. The critical moment is when the officers falsely claim to have a search warrant. At that point, as the district court put it, his lips are effectively sealed. It doesn't really matter what he says because they have announced their right to search. So his cooperation and post-Fourth Amendment violation statements should really play little role. The focus should be more on the culpability of law enforcement's actions when deciding what the appropriate remedy is because law enforcement's actions are to shape so their conduct will be in conformance with the Fourth Amendment. So the fact that he was cooperative should play little role. Another factor the government and the district court sort of sees upon is that this seems like an isolated event. They repeatedly use the term unusual, unusual. But there again, when you have intentional conduct, you don't have to show that it's recurring. We don't have to show that it's part of some systemic negligent error, such as if faulty arrest warrants kept showing up in a computer database. One intentional violation of this nature alone merits exclusion of the evidence. But this is sort of confounded in the government's position. We don't have to show that it's systemic or recurring. Again, the government and the district court sort of ignore this factor and instead apply this more free-ranging balancing test regarding the societal cost and benefits of deterrence. But really, that's just more the rationale to be behind the opinions of Haring and that line of cases. This, you know, lying about having a search warrant is patently unconstitutional. It's the precise type of conduct that this court should want to deter in the future. The law enforcement made a tactical choice and they shouldn't be able to make that choice when they get it a pinch and then be able to sort of ascribe a noble purpose for it and get away with that type of deception. Again, it would be a misnomer to say this was any type of good faith mistake, as was possibly the United States v. Saphir recently before this court. There was simply no mistake made at all. This is not a mistake of law, not a mistake of fact case. Sergeant Winkler, he knew full well, full and well, that he did not have a search warrant when he told Mr. Rush that he did. And again, this is, Sergeant Winkler is the professional standards division chair in the largest police department in our state. He, of all people, should be aware and conform his conduct with the law. Thank you. Thank you, Mr. Johnson. Why don't we hear from the state on this and then we'll, the government on this, and then we'll give you additional time to respond. Thank you, Your Honor. Good morning, Your Honors. May it please the court, I'm John Frayl and I'm an assistant United States Attorney in the Southern District of West Virginia on behalf of the Apo Lee. I came up yesterday, Your Honor, and stayed at the Omni, and they were nice. And I will tell you, this is the first, the last time I was before this court, Judge Hayden was still on the bench. It's been a number of years since I've had the pleasure to be here. Tell us, does the good faith exception apply to an instance where the officers deliberately violate the Fourth Amendment constrictions by lying that there's a warrant? That sounds a little loaded, but that's exactly what happened here, wasn't it? Well, Your Honor, I think what Judge Kopenhaver focused on was the fact that if you apply the objective test, what a reasonable officer under the circumstances, whether he would believe it was an illegal search, there just simply wasn't that activity. In this case, he certainly believed it was an intentional lie, because that's what he did, that he had a warrant. And he knows without a warrant, you cannot do the search. It almost seems that if you are under the circumstances, you can go head-on in without a warrant, but this is clearly without a warrant, and you lie to the person there that you have one. And Your Honor, there's no refuting the fact that he did misrepresent or lie to Mr. Rush that he had a warrant. But that happened after they lawfully entered with the written consent and the key of the tenant. There's nothing in the record to suggest that the officer was in any way trying to hinder... Your Honor, I understand this. I thought the district court found there was a Fourth Amendment violation. With regard... And so, the entry and all that consent business doesn't come into play here, because he says there's a violation. Then he found there's a good faith exception. I don't think it's premised that in the first instance, you were in where you were supposed to be. It's that you violated, but you have a good faith exception. You see where I'm going with this? I do, Your Honor. I mean, there are a lot of arguments in here. Probably I would have made one. I mean, I know the case law is pretty solid in terms of him staying there, but I'm not so comfortable that he probably had that Fourth Amendment right once she told him to go in. But that's not before us. The only thing before us is we know there was a violation. We know they lied about the warrant. The court recognized that and said, well, good faith exception, and the basis being because they say they were protecting her. And yet they didn't arrest him. They left him at the house at the end of it, and it just sort of defies. I mean, we try to work with these situations, but this was a hard one. It's very much like Yingle. When you look at it, it's just not adding up. What they're saying they did, the reason they said they did it, is just not matching with the surrounding facts. How would you respond to that, particularly in light of Yingle? Your Honor, I would respond by saying their only concern for Ms. Willis was if the defendant knew that she was the one that provided the consent. He was so cooperative from the time they entered the bedroom. Even when they found the drugs, he immediately admitted ownership of the drugs and exonerated her. Quite frankly, if that hadn't happened, the officers would have had drugs in a kitchen cabinet, a tenant. He went out of his way to protect her, and yet they think they need to protect her from him. And here he just gives himself up for her. I'm going back to Judge Thacker's question. That really does not fly very well, that the whole basis for this was to protect her from him. And here's a man that says, oh, this is mine, who completely just exonerates her and doesn't want her to be involved at all. But, Your Honor, that all happened after they told him that they had a warrant in order to protect her identity. Then, because he was so cooperative, he agreed to come to the Metropolitan Drug Enforcement Network team office to provide even more details about his source. Did they talk to Ms. Willis and said, well, you know, do we need to do these things? Do we need to go there and tell them we got a warrant because we need to protect you? Or did they just come to that conclusion when they got to the house? Your Honor, according to the record, Ms. Willis, when she met with the officers, both Knapper and Winkler, at the dog track, she told them that she knew both the defendant and his family and she was afraid. She didn't specifically say, well, she told them that she wanted him out. And that was part of her motivation in calling that and her belief that he was selling drugs from her apartment. So, clearly, they believed when they went in, although there was never any pre-plan or discussion before they went in to misrepresent that they had a warrant, or even to try to keep her identity known, that was something that Officer Winkler did, I believe, on the spur of the moment. And I believe that's supported by the record. And that his sole motivation in saying we have a warrant was simply because he was concerned at that point about her safety. But for the good faith exception, we don't look at the subjective motivations, do we? We look at the objective circumstances. That's correct, Your Honor. But I think you have to look at the facts in order to make an objective test. You have to look at what the officer was confronted with to determine whether another officer in a similar situation would arrive at the same conclusion that it's an unlawful search. There is nothing to suggest that an officer would believe that this defendant could in any way interfere with that search. For example, if the officer had merely said we're here to conduct a search, it was the fact he used the word warrant. They entered that house believing they had lawful reasons to be there and to execute that written consent and to enter that apartment with the key of the owner. So they went in there believing they were doing a lawful search. And as Judge Copenhaver even said, the entry with the written consent and the key of the tenant, there's not a better set of facts for a lawful search. It was only at that point, and keep in mind this was after the defendant was brought from the bedroom into the living room. Judge Copenhaver discredited everything the defendant testified to at the suppression hearing when the defendant testified. He repeatedly asked to see a warrant. He repeatedly asked what their authority was to be there. All of that was discredited by the district court so that until he was brought into the living room, he was fully cooperative. There was nothing to suggest in the record that he intended in any way to interfere. After the drugs were found, he continued to cooperate. He consented to the search of his vehicle. He turned over his cell phone. And then he went one step further and he even showed up at the police station sometime after to further provide information about his source. All of this suggests a defendant who was fully cooperative, whose lips were not sealed by the officer telling him that they had a search warrant. The court properly found that there would be no deterrent effect in applying exclusionary rule in this case and that the cost of applying that would be greatly outweighed by the minimal deterrent effect, if any, as Judge Copenhaver said. Clearly, this officer, if you apply an objective standard to what he did, it is clear that excluding the evidence would be improper and this court should affirm the decision of the district court. If there are any other questions, I'll be happy to answer. Thank you very much. Thank you. Have a nice trip home. Thank you. Mr. Johnson, do you wish to add anything to your comments? Just briefly, Your Honor. Thank you. Your Honor, there's one thing I want to point out in keeping with Your Honor's questions is that this is a sort of largely undeveloped and speculative claim about Mr. Rush's dangerousness. In fact, there's no evidence in the record that Ms. Willis even asked that her identity not be disclosed or provided to him. It's just this sort of bare statement that she was afraid of his family. Again, this is largely undeveloped. And again, Your Honors, the government doesn't really say what level of culpability is described in law enforcement's conduct. Is it intentional? Is it deliberate? Is it negligent? Is it grossly negligent? Is it reckless? Or is it something else? Instead, just this free-ranging balancing test, which is really not the proper standard to be applied. Again, if you have intentional, deliberate conduct, the exclusionary rule applies. The rule is the jurisprudence is plain on that. This case is similar to the Engle case, as Your Honor noted. It's also not this similar from the Seminole MAP v. Ohio case, where the officer was forced to open Mrs. MAP's house, prevented her lawyer from entering, announced they had a warrant and placed her in handcuffs and canvassed the house and found things. This case is more egregious than the recent severe case, where I believe that case involved a mistaken belief of lawful authority, where the officer at the traffic stop announced he had probable cause to search. The driver assented, and I believe a firearm was found. This is clearly more egregious because a search warrant is even more authority than just the officer's announcement that he believes he has probable cause. Thank you, Mr. Johnson. We understand your case as well as the government's case here. We'll take this under advisement for the information we have. We'll come down and agree to counsel and proceed to the second case. Thank you.
judges: James A. Wynn, Jr., Henry F. Floyd, Stephanie D. Thacker